1
2
3
4
5
6
7 # UNITED STATES DISTRICT COURT
8 ## DISTRICT OF NEVADA
9

10 FOUR SEASONS HOTEL LAS VEGAS,

11     Plaintiff,                Case No. 2:06-CV-00077-KJD-RJJ

12 v.                            **ORDER**

13 GET-A-WAY TRAVEL, INC. d/b/a
GTI/CARLSON WAGONLIT TRAVEL,
14 GTI CORPORATE TRAVEL d/b/a
GTI/CARLSON WAGONLIT TRAVEL,
15 GENR8TNEXT, LLC, and DOES I-X,
inclusive,
16

17     Defendants.

18       Presently, the Court has before it Defendant Get-A-Way Travel, Inc. d/b/a GTI/Carlson

19 Wagonlit Travel, GTI Corporate Travel d/b/a GTI/Carlson Wagonlit Travel's ("GTI") Motion to

20 Dismiss (#17).  Plaintiff filed a response in opposition (#26), to which Defendant GTI filed a reply

21 (#29).

22 **I.  Background.**

23       In September 2003, Robin Middleton, Sales Manager for the Four Seasons Hotel Las Vegas

24 (hereinafter "Four Seasons" or "Plaintiff") and Bonnie Simon, President of Defendant GTI

25 negotiated terms for an event to be held at the Four Seasons in April 2005.  These negotiations

26 culminated into a contract, the terms of which are memorialized in the "Group Event Agreement"

1   dated September 24, 2003.  The Group Event Agreement states that it "constitutes the entire

2   agreement between GenR8Tnext and GTI Carlson Wagonlit Travel (the 'Patron') and the Four

3   Seasons Hotel Las Vegas (the 'Hotel') regarding arrangements for the GenR8Tnext (the 'Event') to

4   be held over the dates of April 10 to April 17, 2005, inclusive."  Ms. Middleton signed the agreement

5   on September 24, 2003, as the representative of the Four Seasons.  On September 25, 2003, Ms.

6   Simon signed the agreement on behalf of Defendant GTI.  Above the signature line for Ms. Simon,

7   the agreement states "GTI Carlson Wagonlit Travel (the 'Patron')".  Mr. Maroon signed the

8   agreement on September 26, 2003, on behalf of GenR8Tnext.  Additionally, each page of the Group

9   Event Agreement required the "Patron's Initials."  The bottom of each page has been initialed with a

10  "PM" and "BS" presumably for Peter Maroon and Bonnie Simon.  Additionally, the agreement

11  contains many handwritten interlineations which are presumably approved by the parties given the

12  initials of the three previously mentioned signers.

13      In the agreement, "the Patron" agrees to contribute to expected banquet revenue, complete a

14  credit application if requested, give prior written notice to the Four Seasons upon cancellation of the

15  event, pay liquidated damages upon cancellation, and pay all damages resulting from negligence or

16  misconduct.  As noted previously, the signature page of the agreement names Defendant GTI as "the

17  Patron."  Notwithstanding the signature page and the initials at the bottom of the pages, the

18  agreement contains some ambiguity concerning Defendant GTI's status.  Of particular note is a

19  handwritten interlineation contained in the section of the agreement discussing the possibility of a

20  commission.  The agreement states that the "Agency of Record" is the only entity which will be paid

21  a commission for the event.  Above "Agency of Record" the parties have interlined "GTI."  The

22  initials of Bonnie Simon, Robin Middleton and Peter Maroon, accompany this handwritten

23  interlineation.

24      The event contemplated by the agreement was held April 10-17, 2005.  Plaintiff sent an

25  invoice to Defendants for the amount owed.  Despite Plaintiff's demands, Defendants have failed to

26

2

1  pay the total amount due to Plaintiff for services provided under the Group Event Agreement.  As of

2  August 25, 2005, Plaintiff was owed $259,810.82 in principal.  Pursuant to the agreement, invoices

3  outstanding for more than 30 days bear interest at a rate of 18% per annum.  Based on the unpaid

4  invoice, Plaintiff filed the instant Complaint alleging two claims against all Defendants:  (1) Breach

5  of Contract, and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing.  Defendant GTI

6  has now filed a motion to dismiss arguing that the Court lacks personal jurisdiction over it and that

7  Plaintiff has failed to state a claim upon which relief may be granted.

8  **II.  Analysis.**

9        Where, as here, there are no applicable federal statutes governing personal jurisdiction, the

10  district court applies the laws of the state in which its sits.  See Dole Food Co. v. Watts, 303 F.3d

11  1104, 1110 (9th Cir. 2002).  Nevada's long-arm statute bestows the broadest grant of personal

12  jurisdiction consistent with due process.  See Nev. Rev. Stat. § 14.065(1).  Because Nevada's long-

13  arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional

14  analyses under state law and federal due process are the same.  See Schwarzenegger v. Fred Martin

15  Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004); Trump v. Eighth Jud. Dist. Ct., 109 Nev. 687, 698,

16  857 P.2d 740, 747 (1993).

17        "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant

18  must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction

19  'does not offend traditional notions of fair play and substantial justice.'"  Schwarzenegger 374 F.3d

20  at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The court gains personal

21  jurisdiction over nonresidents by either (1) "general jurisdiction," which arises where the defendant's

22  activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the

23  exercise of jurisdiction over it even if the cause of action is unrelated to those contacts, or (2) specific

24  jurisdiction," which arises when a defendant's contacts with the forum state have given rise to the

25  claim in question.  See Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003).

26

1    In its Motion to Dismiss, Defendant GTI simply argues that Plaintiff failed to allege facts

2    necessary to confer personal jurisdiction over it.  The Complaint is indeed quite brief.  In its

3    Opposition, however, Plaintiff outlines the many contacts Defendant GTI had with Nevada to allow

4    this Court to maintain personal jurisdiction over this Defendant.  Notably, Defendant GTI's Reply

5    fails to address or refute any of the arguments or events outlined in Plaintiff's Opposition.  The Court

6    accordingly finds that Defendant GTI has abandoned this argument.  Moreover, the facts presented in

7    the Opposition appear to justify the Court's exercise of personal jurisdiction over Defendant GTI.

8    Defendant GTI next argues that Plaintiff has failed to state a claim against it upon which

9    relief may be granted.  A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is a ruling on

10   a question of law.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  In

11   reviewing a Rule 12(b)(6) motion, the court "must construe the complaint in the light must favorable

12   to the plaintiff and must accept all well-pleaded factual allegations as true." Shwarz v. United States,

13   234 F.3d 428, 435 (9th Cir. 2000).  Review is typically limited to the contents of the complaint.  See

14   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  A complaint should not be

15   dismissed for failure to state a claim unless it appears beyond a reasonable doubt that Plaintiff can

16   prove no set of facts in support of its claims that would entitle it to relief.  See Sprewell, 266 F.3d at

17   988.

18    If a court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion to

19   dismiss into a Rule 56 motion for summary judgment.  See United States v. Ritchie, 342 F.3d 903,

20   907 (9th Cir. 2003).  However, a court may consider certain materials that are either attached or

21   incorporated by reference in the complaint as well as matters of judicial notice without converting a

22   motion to dismiss into a summary judgment motion.  See id. at  908.  If documents are physically

23   attached to the complaint, then a court may consider them if their authenticity is not contested and

24   the plaintiff's complaint necessarily relies on them.  See id.  A court may also treat certain

25

26

4

1  documents as incorporated by reference if the complaint refers extensively to the document or the

2  document forms the basis of the plaintiff's claim.  See id.

3       Attached as Exhibit 1 to Plaintiff's Complaint is a copy of the Group Event Agreement dated

4  September 24, 2003.  Additionally, the parties have submitted several documents in the course of

5  addressing Defendant GTI's Motion to Dismiss.  Attached to Plaintiff's Opposition are copies of a

6  Credit Card Guarantee from Defendant GeneR8Tnext; a Credit Card Authorization from

7  GeneR8Tnext; three amendments to the Group Event Agreement dated September 24, 2003, January

8  14, 2005, and March 24, 2005; an Invoice dated August 25, 2005; and the Affidavit of Robin

9  Valenta.[1]  Defendant GTI attached to its Reply copies of the Affidavit of Bonnie Simon as well as an

10  interlined version of the Group Event Agreement dated September 4, 2003.

11       Given all the attached documents, the Court is presented with the option of addressing

12  Defendant GTI's Motion to Dismiss (with the limitations on what documents can be reviewed) or

13  transforming it into a motion for summary judgment.  The Court elects to limit its review to one for a

14  motion to dismiss.  Although such review is typically limited to the contents of the Complaint, the

15  Court will also consider the Group Event Agreement dated September 24, 2003.  A copy of the

16  agreement was physically attached to the Complaint and no party has challenged its authenticity.  See

17  id.  More importantly, the Complaint relies on the agreement and it forms the basis of Plaintiff's

18  claims.  See id.

19       After reviewing the Complaint and Group Event Agreement dated September 24, 2003, the

20  Court finds that dismissal is inappropriate at this stage of the litigation.  Understandably, Defendant

21  GTI's full name, Get-A-Way Travel, Inc. d/b/a GTI/Carlson Wagonlit Travel, GTI Corporate Travel

22  d/b/a GTI/Carlson Wagonlit Travel, strongly suggests that this Defendant was the travel agent for

23  Defendant GenR8Tnext.  Additionally, the handwritten interlineation of "GTI" above the term

24  _____

25  [1]Nowhere does Plaintiff explain who Robin Valenta is in relation to the Robin Middleton who signed the Group Event Agreement.  Presumably, they are the same person.

26           5

1   "Agency of Record" (with the confirming initials of the three signatories) also strongly suggests that

2   Defendant GTI was merely the agent of Defendant GenR8Tnext.  Nevertheless, several facts suggest

3   that Defendant GTI was a liable party under the agreement.  Defendant GTI signed the agreement as

4   "the Patron" which correspondly required this Defendant to perform certain duties outlined therein,

5   including responsibility of payment.  Bonnie Simon's initials appear at the bottom of every page in

6   the area reserved for the "Patron's initials."  Nowhere in the agreement was it stated that Defendant

7   GTI executed it on behalf of, or as an agent for, Defendant GenR8Tnext.  The Agreement can be read

8   to support either party's position.  Accordingly, Defendant has not met its heavy burden of showing

9   that Plaintiff can prove no facts in support of its claims that would entitle it to relief.

10  **III.  Conclusion.**

11          Defendant GTI's motion must be denied.  Defendant abandoned its argument that the Court

12  lacked personal jurisdiction over it.  Moreover, the evidence presented by Plaintiff suggests the

13  contrary finding.  Finally, Defendant GTI has failed to met its burden regarding its Rule 12(b)(6)

14  argument.  A review of the Complaint and Group Event Agreement dated September 24, 2003,

15  reveals that Plaintiff has stated claims (Breach of Contract and Breach of the Implied Covenant of

16  Good Faith and Fair Dealing) upon which relief may be granted.

17          Accordingly, IT IS HEREBY ORDERED that Defendant GTI's Motion to Dismiss (#17) is

18  **DENIED**.

19          DATED this 5th day of July 2006.

20

21

22

23  Kent J. Dawson
    United States District Judge

24

25

26

6